JOHN H. SHALBEY & another *vs.* BOARD OF APPEAL OF NORWOOD & another.

Norfolk.   January 10, 1978. — August 1, 1978.

Present: HALE, C.J., GRANT, & ARMSTRONG, JJ.

*Zoning*, Special permit; Board of appeals: decision.

The procedures employed by a town's planning board and board of appeal in considering a reapplication for a special permit within two years after the denial of an original application were governed by G. L. c. 40A, § 20, as amended by St. 1969, c. 870, § 2, rather than by the more restrictive provisions of c. 40A, § 16, as appearing in St. 1975, c. 808, § 3, where the town's zoning by-law had been adopted prior to the effective date of St. 1975, c. 808, and the town had not accepted the provisions of the 1975 act prior to considering the reapplication. [522–527]

In an action seeking the annulment of a decision by a town's board of appeal granting the defendant a special permit, there was no merit to the plaintiffs' contentions that the town's planning board merely "rubber-stamped" the applicant's request to reapply within two years after the denial of its original application and that they were constitutionally entitled to notice of the planning board hearing on whether to consent to the reapplication. [527–528]

In an action seeking the annulment of a decision by a town's board of appeal granting a special permit, there was no merit to the contention that the decision should be annulled because an associate member of the board appeared at the hearing and spoke in favor of the

Shalbey v. Board of Appeal of Norwood.

application as a private citizen, though playing no official role at the hearing or in arriving at the decision. [528]

In an action seeking the annulment of a decision by a town's board of appeal granting a special permit, there was no merit to the contention that the decision should be annulled because it contained improper conditions. [528–529]

In an action seeking the annulment of a decision by a town's board of appeal granting a special permit for the operation of a restaurant, the judge's findings concerning the expected effect of the proposed restaurant on the neighborhood were not clearly erroneous. [529]

CIVIL ACTION commenced in the Superior Court on December 30, 1976.

The case was heard by *Brown, J.*, a District Court judge sitting under statutory authority.

*Robert C. Capasso* for the plaintiffs.

*Neil L. Lynch* for the defendants.

ARMSTRONG, J. This is an action seeking the annulment of a decision by which the defendant board granted to the defendant Jan Co., Inc. (the applicant), a special permit for the operation of a fast-food Burger King restaurant in a district zoned for manufacturing. The plaintiffs, who own premises abutting the locus in the same zoning district, appeal from a judgment upholding the decision.

1. The most substantial of the issues raised by the appeal is the plaintiffs' contention that the application for the permit was subject to certain provisions of G. L. c. 40A, as appearing in St. 1975, c. 808, § 3, rather than to the comparable (but less restrictive) provisions of G. L. c. 40A prior to the 1975 revisions. The provisions in question are those relating to reapplications for a special permit within two years after the denial of an original application. General Laws c. 40A, § 20, as amended by St. 1969, c. 870, § 2, provided in material part that "... [n]o application for a [special permit] which has been unfavorably acted upon by the board of appeals shall be considered on its merits by said board within two years after the date of such unfavorable action except with the consent of ... the planning board ...." The 1975 act replaced that section with a new c. 40A, § 16, which is in

most respects a reenactment of the old § 20, but which forbids the reconsideration of an application within the two-year period "unless [the board of appeals] finds . . . specific and material changes in the conditions upon which the previous unfavorable action was based, and describes such changes in the record of its proceedings, and unless . . . the planning board consents thereto and after notice is given to parties in interest of the time and place of the proceedings when the question of such consent will be considered."

The procedure followed in the present case was clearly not in compliance with the requirements of the new § 16. On March 23, 1976, the board of appeal rendered a decision denying the applicant a special permit to operate a Burger King restaurant on the locus. The applicant did not seek judicial review of that decision, but obtained the unanimous consent of the planning board on August 3, 1976, to reapply for a permit within the two-year period. The board of appeal heard the reapplication on its merits on September 21, 1976, and its decision granting the permit was dated October 26 of that year. The decision contained no finding of "specific and material changes" or description of such changes as were required by the new G. L. c. 40A, § 16, if it was then in effect. And we assume with the plaintiffs that the planning board failed to give them notice of its proceeding on the question of consent, as contemplated by the new section.

The 1975 revision of c. 40A was approved by the Governor on December 22, 1975, at which time he executed and filed with the Secretary of the Commonwealth an emergency declaration. In the absence of a provision to the contrary in the text of the act, the execution and filing of the emergency declaration would have advanced the effective date of the act to December 22, 1975 (*Opinion of the Justices*, 368 Mass. 889 [1975]), in which case the actions of the board of appeal and planning board would have been subject to the newly imposed restrictions in the 1975 version of c. 40A, § 16. The question, then, is wheth-

er the 1975 act contains any provision which postponed the effective date of the new c. 40A, § 16, as applied to the town of Norwood, to a time later than the actions of the board of appeal and planning board complained of.

The first paragraph of § 7 of the 1975 act (i.e., St. 1975, c. 808) provides: "This act shall take effect on [January 1, 1976] *as to zoning ordinances and by-laws* and amendments, other than zoning map amendments, *adopted after said date*" (emphasis supplied). The second paragraph of that section, as appearing in St. 1977, c. 829, § 4,[1] provides: "*Zoning ordinances and by-laws in effect on said date* shall continue to be governed by the provisions of [G. L. c. 40A] in effect prior to said date until this act is accepted by each respective city or town, provided that no later than [June 30, 1978] *all zoning ordinances and by-laws* shall be brought into conformity with the provisions of this chapter and shall be governed hereby, and thereafter no provisions of [G. L. c. 40A] in effect prior to [January 1, 1976] shall govern *zoning ordinances and by-laws*" (emphasis supplied). The zoning by-law involved in the present case was adopted well before 1975, and it has been stipulated by the parties that Norwood had not accepted the 1975 act when the special permit was granted.

The plaintiffs contend that § 7 of the 1975 act has no application to the effective date of G. L. c. 40A, § 16, as inserted by § 3 of the act. They base their contention on

[1] The text of this paragraph originally appeared in § 5 of the 1975 act, as a second paragraph of an amendment to G. L. c. 240, § 14A. The first paragraph of that amendment did nothing more than correct an obsolete cross-reference between statutes. The insertion of the second paragraph in that location was obviously a product of oversight. See Bok & White, The New Zoning Act, 20 B.B.J. (No.2) at 11, 16 (1976). The error was corrected by St. 1977, c. 828, entitled "An Act making certain corrective changes in certain general and special laws." Section 3G of that act deleted the paragraph from St. 1975, c. 808, § 5; § 4 of the 1977 act inserted it in § 7 of the 1975 act; and § 14 deleted it from G. L. c. 240, § 14A. In this opinion we treat the paragraph as having been a part of St. 1975, c. 808, § 7, from the outset. Compare *Evans* v. *Building Inspector of Peabody*, 5 Mass. App. Ct. 805 (1977).

the fact that both paragraphs of § 7 seem to address them-
selves to the time when the provisions of municipal zon-
ing ordinances and by-laws must have been brought into
compliance with the provisions of the new law and not in
terms of the effective date of the new law for other pur-
poses, such as administration, enforcement, and amend-
ment of zoning by-laws and ordinances. The argument, as
we understand it, is that the effective date of the newly
enacted provisions of c. 40A in a given municipality is
specified by § 7 only insofar as those provisions relate to
the content of zoning ordinances and by-laws, that all
other provisions of the new c. 40A took effect in all
municipalities on December 22, 1975, when the Governor
filed the emergency declaration, and that the new G. L.
c. 40A, § 16, as a provision having to do with administra-
tion of zoning by-laws and not with the content of such
by-laws, falls within the latter category.

What the Legislature may have had in mind when it
drafted § 7 is not entirely clear from the language it em-
ployed.[2] The plaintiffs' suggested interpretation is plausi-
ble in the abstract. In practice, it would be exceedingly
difficult to apply. That is because the provisions of the
new act regulating the content of zoning ordinances and
by-laws are closely interwoven with provisions relating to
the administration and enforcement of such ordinances
and by-laws. Provisions falling on both sides of the effec-
tive date dividing line suggested by the plaintiffs are oft-
en found within the same section,[3] paragraph,[4] or sen-

[2] The ambiguity has been noted in Hays, Application of Chapter 808
to Existing Structures, Uses, Plan Variances and Permits, 22 B.B.J.
(No. 4) 17 (1978).

[3] See G. L. c. 40A, § 6, as appearing in St. 1975, c. 808, § 3. The second
and third paragraphs of § 6 regulate content of zoning ordinances; the
other seven paragraphs have to do with administration and enforce-
ment.

[4] See G. L. c. 40A, § 9, seventh par., as appearing in St. 1975, c. 808,
§ 3. The first sentence of the paragraph regulates content; the remain-
ing sentences concern administration and enforcement. The same is
true of the first paragraph of § 9 and of the third paragraph of § 11.

tence.[5] Confusing matters further are various provisions which could be difficult to classify, because by their form they relate to content, requiring cities and towns to include various detailed procedural provisions in their zoning ordinances or by-laws, but in substance doubtless set out requirements of general applicability whether or not the ordinance or by-law so provides.[6] Any attempt to sort out the portions of the new c. 40A which bear on the content of zoning ordinances and by-laws from those which do not, and to assign different effective dates accordingly, would produce bizarre results and effect a substantial loss of the chapter's integrity until all portions should have become effective. We do not think that it was the intention of the Legislature that the new c. 40A should take effect in a given municipality in bits and pieces. Compare *Goldman* v. *Dennis*, 375 Mass. 197, 199 (1978). The more likely purpose was to give a municipality until July 1, 1978, to conform its zoning ordinances or by-laws to the requirements of the new c. 40A and to retain the old c. 40A in effect until that time, subject to two exceptions: first, if the municipality chose to have the new c. 40A take effect before July 1, 1978, it could accept "this act"[7] prior to that time; and, second, any new zoning

---

[5] See G. L. c. 40A, § 9, second par. (first sentence) and third par.

[6] See, e.g., G. L. c. 40A, § 6 (second par.) and § 9 (seventh par., first sentence, eighth and ninth pars.), all as appearing in St. 1975, c. 808, § 3.

[7] The reference in St. 1975, c. 808, § 7, to a city's or town's earlier acceptance of "this act" probably suggests that the delayed effective date was intended to apply to all provisions of c. 808 rather than only to those provisions amending G. L. c. 40A; but it is conceivable that "this act" might refer to the new G. L. c. 40A, which, by the terms of § 1 thereof, is to be cited as "The Zoning Act." Section 7 of the 1975 act is very confusing in this respect, because in some portions it seems to be speaking of the effective date of St. 1975, c. 808, and in other portions it seems to be speaking of the effective date of the new G. L. c. 40A appearing in § 3 of c. 808. For purposes of the decision in this case we need only determine the effective date in Norwood of the new G. L. c. 40A, and we need not and do not determine the effective date of the other provisions of St. 1975, c. 808.

ordinances and by-laws or amendments to zoning ordinances or by-laws adopted prior to July 1, 1978, must be in compliance with the new c. 40A whether the municipality had accepted "this act" or not. This appears to be substantially the interpretation suggested in Bok & White, The New Zoning Act, 20 B.B.J. (No.2) 11, 16 (1976), and is to be preferred to the interpretation suggested by the plaintiffs because it is simple to apply and sensible in result.

We conclude, therefore, that the procedures employed by the planning board and the board of appeal in considering the reapplication were governed not by the new G. L. c. 40A, § 16, but by the old G. L. c. 40A, § 20.

2. The plaintiffs also argue that, apart from compliance with the new § 16, the planning board's action in allowing the applicant to reapply for a special permit was improper in two respects: (a) the board, though required by the old § 20 to exercise judgment in acting on the applicant's request to reapply, did not do so but merely "rubber-stamped" the application; and (b) the plaintiffs were entitled to notice of the planning board hearing as a matter of Federal and State constitutional law. Neither of those issues is properly before us, as it does not appear from the record that they were ever raised in the Superior Court. *Royal Indem. Co.* v. *Blakeley*, 372 Mass. 86, 87–88 (1977). The contentions are without merit in any event, as there has been no showing that the planning board acted in the mechanical fashion asserted,[8] and as we know of no con-

---

[8] The plaintiffs rely here on the following paragraph in the decision of the planning board: "It is not the intention of the Planning Board to indicate support for or against this request, but only permission to hold the public hearing without having to wait the two year period." While the quoted statement demonstrated an intention not to determine the merits of the application (which, of course, was within the exclusive province of the board of appeal), we do not regard it as supporting the assertion that the planning board simply "rubber-stamped" the applicant's request.

stitutional requirement that opposing parties be given notice of a preliminary administrative action of the type contemplated by § 20.

3. There is no merit in the plaintiffs' contention that the decision of the board of appeal should be annulled because an associate member of the board appeared at the hearing and spoke in favor of the application as a private citizen, though playing no official role at the hearing or in arriving at the decision. Compare *Kiss* v. *Board of Appeals of Longmeadow*, 371 Mass. 147, 159 (1976). Contrast *Selectmen of Barnstable* v. *Alcoholic Beverages Control Commn.*, 373 Mass. 708, 710–714 (1977). The last sentence of G. L. c. 40A, § 14, as in effect prior to St. 1975, c. 808, § 3, provided: "No member or associate member of the board of appeals shall represent before such board any party of interest in any matter pending before it." We read that sentence as permitting, by negative implication, the appearance of a member in proceedings before the board so long as the member doing so does not represent any party in interest.

4. The contention that the board of appeal's decision was vitiated by the inclusion therein of supposedly improper conditions was not made in the Superior Court and therefore need not be ruled upon unless it is regarded as going to the jurisdiction of that court. *Royal Indem. Co.* v. *Blakeley, supra.* But whether or not it be so regarded, the contention is without merit. The condition numbered 5 in the decision, that "[a]dequate drainage must be provided by the applicant," though imprecise, was not one requiring a further determination of substance by the board or otherwise preventing the decision from taking immediate effect. See *Planning Bd. of Falmouth* v. *Board of Appeals of Falmouth*, 5 Mass. App. Ct. 324, 325–327 (1977). Compare *Kiss* v. *Board of Appeals of Longmeadow*, 371 Mass. at 158–159. Contrast *Weld* v. *Board of Appeals of Gloucester*, 345 Mass. 376, 378–379 (1963). The "condition" numbered 7 ("It appears portions of this project may come under the jurisdiction of the Conservation

Commission under the Hatch Act, [G. L. c. 131, § 40].") is not really a condition at all. Rather, it is merely a caveat that the applicant might be required to await a decision by the conservation commission before being able to act under the special permit granted by the board. The inclusion of such a caveat in the board's decision cannot be regarded as an attempted delegation by the board of its authority to another agency or as affecting the validity of the board's decision, as the conservation commission derives its jurisdiction from the statute cited above and not from anything the board might say. Contrast *Kiss* v. *Board of Appeals of Longmeadow, supra.*

5. The findings of the judge concerning the expected effect of the applicant's proposed restaurant on the neighborhood must stand unless clearly erroneous. See *Building Inspector of Lancaster* v. *Sanderson,* 372 Mass. 157, 159–161 (1977). Taking into consideration (a) the fact that the judge had the benefit of a view of the neighborhood (see *Kairis* v. *Board of Appeal of Cambridge,* 337 Mass. 528, 531 [1958]), (b) his power to fill gaps in the formal proof of some of the matters at issue by the exercise of common sense (see *Fritsch* v. *Korostynski,* 4 Mass. App. Ct. 868 [1976]), (c) the testimony that no alcoholic beverages would be served on the locus nor any loitering permitted, and (d) the well recognized principle that the weight to be accorded oral testimony is a matter for the trial judge rather than for this court (see *Hamilton* v. *Planning Bd. of Lexington,* 4 Mass. App. Ct. 802 [1976]), we cannot say that the judge's findings are clearly erroneous. In reaching this conclusion, we have borne in mind that the criteria for granting a special permit are less stringent than those for granting a variance, and that the wisdom of granting the permit here is not a proper subject for judicial review. *Kiss* v. *Board of Appeals of Longmeadow,* 371 Mass. at 153–154. *Caruso* v. *Pastan,* 1 Mass. App. Ct. 28, 30 (1973).

6. We do not reach the further question whether there was sufficient evidence to warrant the judge's findings to

Shalbey *v.* Board of Appeal of Norwood.

the effect that there had previously been a natural watercourse flowing across the locus and that the applicant was entitled to use that watercourse for drainage of surface water. The board made no findings in that regard, but instead, as noted in part 4 of this opinion, conditioned the special permit on the applicant's providing "[a]dequate drainage." Under G. L. c. 40A, § 21, as in effect prior to St. 1975, c. 808, § 3, the judge was required to determine only "whether or not upon all the evidence the decision exceed[ed] the authority of the board." It was inappropriate for him to include the findings concerning the alleged watercourse, as its existence was not germane to the validity of the permit, but only to the applicant's ability to comply with one of the conditions to which the permit was made subject. The enforcement of that condition will presumably be the responsibility of the inspector of buildings when the applicant seeks a building permit. We therefore treat those findings as surplusage, but, because they are in no way reflected in the judgment appealed from, we need do no more.

No question has been raised as to the form of that judgment.

*Judgment affirmed.*