VICTOR G. CASASANTA & another[1] vs. ZONING BOARD OF
APPEALS OF MILFORD.

Worcester. November 6, 1978. — January 9, 1979.

Present: HENNESSEY, C.J., KAPLAN, WILKINS, LIACOS, & ABRAMS, JJ.

Zoning, Board of appeals: decision; Variance. Statute, Effective date,
Emergency law. Constitutional Law, Emergency law.

Under the framework of a new zoning act, G. L. c. 40A, as inserted by
St. 1975, c. 808, § 3, zoning ordinances and by-laws in operation on
January 1, 1976, were to continue to be "governed by" the preced-
ing zoning law until municipal acceptance of the new act, but no
later than June 30, 1978, and the application of the provisions of
the new act about procedure or administration was postponed,
equally with its substantive provisions, as far as existing ordinances
and by-laws were concerned; upon appeal from a summary judg-
ment annulling the decision of the board of appeals of a town
denying the plaintiffs' application, filed May 2, 1977, for a variance
from the minimum lot area requirement of the long-standing zon-
ing by-law, and declaring that the application was deemed granted
due to the board's failure to make its decision within the seventy-
five-day period specified in the new act, this court ordered the
summary judgment vacated and the case remanded for further
proceedings. [69-75]

The emergency declaration accompanying the Governor's approval of
a new zoning act, which contained no emergency preamble in its
text and would not of itself have gone into effect before the nine-
tieth day after his approval, but which stated that some of its
provisions should become effective before the ninety days, was ad-
visable as assuring immediate implementation of the legislative
design. [73-74]

CIVIL ACTION commenced in the Superior Court on Au-
gust 11, 1977.

[1] Mikael Bedrosian.

The case was heard by *Beaudreau, J.*, on a motion for summary judgment.

The Supreme Judicial Court granted a request for direct appellate review.

*Alix Smullin* for the plaintiffs.

*Edward P. Doherty*, Town Counsel (*Ernest P. Pettinari*, Assistant Town Counsel, with him) for the defendant.

KAPLAN, J. The plaintiffs Casasanta and Bedrosian, coowners of lot 213 of a subdivision in the town of Milford, applied to the defendant zoning board of appeals on May 2, 1977, for a variance which would permit them to build a single-family house on the lot although the minimum lot area requirement of 15,000 square feet, established by a long-standing by-law, was not met. The board held a public hearing on the matter on June 23, 1977, pursuant to notice, and at a meeting of the board on June 28 the members voted unanimously to deny the petition. A written decision with a full statement of reasons, dated July 20, 1977, was filed with the town clerk on July 22, 1977 (eighty-one days after the application). Notice of the decision was then promptly mailed to the plaintiffs and others.

Aggrieved, the plaintiffs on August 11, 1977, commenced the present action in the Superior Court to annul the board's decision. The complaint charged: First, the variance must be taken to have been granted as matter of law—"constructively" granted—because of the failure of the board to act within seventy-five days of the application for the variance, in accordance with G. L. c. 40A, § 15, a provision of the new zoning law enacted in its entirety by § 3 of St. 1975, c. 808, approved by the Governor on December 22, 1975. Second, the denial of the variance was erroneous and illegal on the merits. Relief was prayed in the form of an annulment of the board's decision with a corresponding declaration of rights. After the defendant's appearance in the action, the plaintiffs moved for summary judgment in their favor advancing only the first ground of their complaint. The affidavits

supporting and opposing the motion did little more than recount the chronology set out above, and the question as put to the judge reduced to whether it was new § 15 that controlled, or, as contended by the defendant, § 18 of the predecessor c. 40A, under which the decision of the board would not fail of effect. The judge granted summary judgment for the plaintiffs. The defendant appealed to the Appeals Court. We granted an application for direct appellate review.[2] We reverse.

We shall note the changes introduced by the new law regarding the period for action by boards of appeals on an application for a variance, and regarding the consequences of inaction. Then we shall look to the new law to discover the date when boards of appeals were bound to begin to comply with these changes of practice.

Section 18 of the old law stated that "[t]he decision of the board shall be made within sixty days after the date of the filing of an appeal, application or petition"; but this court held in *Cullen* v. *Building Inspector of N. Attleborough,* 353 Mass. 671, 679 (1968), that the period mentioned in that section was ordinarily to be taken as directory rather than mandatory. Under that dispensation, the board's decision herein would be held not invalidated through lack of timeliness. See also *Shuman* v. *Aldermen of Newton,* 361 Mass. 758, 764 n.9 (1972); *Scott* v. *Board of Appeal of Wellesley,* 356 Mass. 159, 162 (1969); *Crosby* v. *Board of Appeals of Weston,* 3 Mass. App. Ct. 713 (1975).[3] Under § 15 of the new law, "[t]he decision of the

---

[2] There was a cross appeal by the plaintiffs from a feature of the judgment under review. The cross appeal was also taken for direct appellate review, but in the view we adopt in this opinion that appeal need not be separately considered. See note 15 *infra.*

[3] There have been suggestions in the cases that where delay was excessive and unjustified or prejudice could be shown § 18 might be read in a more drastic way, see *Shuman* v. *Aldermen of Newton,* 361 Mass. 758, 764 n.9 (1972); *Burwick* v. *Zoning Bd. of Appeals of Worcester,* 1 Mass. App. Ct. 739, 745 (1974), but no such factor was present here. In the view that § 18 thus would be considered merely directory, we need not analyze whether a board's vote could constitute a "deci-

board shall be made within seventy-five days after the date of the filing of an appeal, application or petition except in regard to special permits .... Failure by the board to act within said seventy-five days shall be deemed to be the grant of the relief, application or petition sought, subject to an applicable judicial appeal as provided for in this chapter."[4] Thus the stated period was extended, but it would appear that the softening influence of the *Cullen* case was removed.

We have next to consider the text of St. 1975, c. 808, § 5, second paragraph, and § 7, setting forth the effective dates of the new zoning statute to provide transition from the old to the new. The former provision was reconstituted for purposes of clarity as part of § 7 by St. 1977, c. 829, §§ 3G, 4.[5] Section 7 provides:

"This act shall take effect on [January 1, 1976] as to zoning ordinances and by-laws and amendments, other than zoning map amendments, adopted after said date.

"Zoning ordinances and by-laws in effect on said date shall continue to be governed by the provisions of [G. L. c. 40A] in effect prior to said date until this act is accepted by each respective city or town, provided that no later than [June 30, 1978] all zoning ordinances and by-laws

---

sion" within § 18 or whether something more, in writing, would be required for the purpose. Cf. *Cullen* v. *Building Inspector of N. Attleborough*, 353 Mass. 671, 679 (1968); *Crosby* v. *Board of Appeals of Weston*, 3 Mass. App. Ct. 713 (1975).

[4] Following the words of § 15 quoted in our text, that section goes on to provide: "The board shall cause to be made a detailed record of its proceedings, indicating the vote of each member upon each question, ... and setting forth clearly the reason or reasons for its decision and of its official actions, copies of all of which shall be filed within fourteen days in the office of the city or town clerk and shall be a public record; and notice of the decision shall be mailed forthwith to the petitioner, applicant or appellant, [and others enumerated]."

The judge below evidently held that the "deemed" language of § 15 applied. We are not required to define "act" as it appears in § 15 or otherwise to explicate that section. See note 15 *infra*.

[5] Regarding this restatement of § 7, see *Shalbey* v. *Board of Appeal of Norwood*, 6 Mass. App. Ct. 521, 524 n.1 (1978).

shall be brought into conformity with the provisions of this chapter and shall be governed hereby, and thereafter no provisions of [c. 40A] in effect prior to [January 1, 1976] shall govern zoning ordinances and by-laws."

Statute 1975, c. 808, contains no emergency preamble, but the Governor on the date of his approval, December 22, 1975, filed with the Secretary of the Commonwealth a declaration that the chapter was an emergency law and should take effect forthwith (1975 Acts and Resolves at 1132-1133).

Under § 7 there seems no doubt that the new law as a whole was to take effect "as to" municipal ordinances, by-laws, and amendments (other than map changes), adopted after January 1, 1976, on the respective dates of their adoption. But ordinances and by-laws in operation on January 1, 1976, were to continue to be "governed by" the provisions of the old law until the new law was accepted by the particular municipality;[6] failing such acceptance, then to the extent these ordinances and by-laws were not earlier brought into conformity with the new law, they would be finally governed by the new law on June 30, 1978.

The plaintiffs suggest that in referring to ordinances and by-laws operative on January 1, 1976, and to their delayed supersession by the new law, the Legislature was pointing to the substantive content of both the municipal provisions and the provisions of the new law, and was not addressing itself to matters of procedure or administration. As to the latter, the plaintiffs argue the new law went into effect immediately pursuant to the Governor's emergency declaration.[7]

---

[6] The town of Milford did not "accept" the new zoning law until March 27, 1978.

[7] That is to say, the effective date of the provisions of the new law regarding matters of procedure or administration would not be regulated by § 7, and so might, according to the argument, be dealt with in the Governor's declaration. We take a quite different position as to that declaration; see the text below.

There may be some plausibility in reading the second paragraph of § 7 as concerned only with substance (the "brought into conformity" may have such a ring), but that interpretation has only a surface appeal, as it would seem to limit artificially and improperly both the expression "the provisions" (of the old law) and the words "governed by" (or variant) appearing in that paragraph. So we think the application of the provisions of the new law about procedure or administration was postponed, equally with the substantive provisions, as far as existing zoning ordinances and by-laws were concerned. If a doubt remained on the score of the meaning of the language, one would be entitled to consider the functional suitability of the competing interpretations, and here the plaintiffs' interpretation would be deeply undesirable. Any attempt to distinguish in actual day to day operations between substance, on the one hand, and procedure or administration, on the other, with effective dates differing as to the two categories, would encounter the difficulties notoriously met in myriad contexts in efforts to separate substantive from adjective law. See *City Council of Waltham* v. *Vinciullo*, 364 Mass. 624, 626-627 (1974).[8] The point was made convincingly by Armstrong, J., writing in a case similar to the present, *Shalbey* v. *Board of Appeal of Norwood*, 6 Mass. App. Ct. 521 (1978),[9] decided by the Appeals Court while the present appeal was pending.[10]

[8] It is true that our interpretation might result in a lack of procedural or administrative uniformity during the interim period as between existing and new municipal zoning enactments in the several towns. But we think such a situation less awkward than that consequent on the plaintiffs' view.

[9] We denied further appellate review of this decision at 376 Mass. 936 (1978).

[10] *Shalbey* involved the question of the effective date of new c. 40A, § 16, which provides that no reapplication for a permit or variance once denied shall be entertained within two years unless there is a finding of "specific and material changes in the conditions upon which the previous unfavorable action was based." The old law, § 20, was not so stringent. The plaintiffs, intending to operate a Burger King restau-

We need not add to his remarks.[11] We observe, too, that a number of the phases of the new law that could be called procedural or administrative were more onerous than their earlier counterparts, so the need for a breathing space to allow the officials and the public to accommodate to them might be thought apparent to a legislative drafts-man.[12]

It may be objected that our conclusion leaves nothing on which the Governor's emergency declaration could operate, but the supposed embarrassment is quite unreal. The new law, in the absence of an emergency preamble in its text, would not of itself have gone into effect before

---

rant, were denied a special permit on March 23, 1976; they reapplied and were granted the permit seven months later. 6 Mass. App. Ct. at 523 (1978). *Shalbey* held the old law governed.

[11] "[P]rovisions of the new act regulating the content of zoning ordi-nances and by-laws are closely interwoven with provisions relating to the administration and enforcement of such ordinances and by-laws. Provisions falling on both sides of the effective date dividing line suggested by the plaintiffs are often found within the same section, paragraph, or sentence. Confusing matters further are various pro-visions which could be difficult to classify, because by their form they relate to content, requiring cities and towns to include various de-tailed procedural provisions in their zoning ordinances or by-laws, but in substance doubtless set out requirements of general applicability whether or not the ordinance or by-law so provides. Any attempt to sort out the portions of the new c. 40A which bear on the content of zoning ordinances and by-laws from those which do not, and to assign different effective dates accordingly, would produce bizarre results and effect a substantial loss of the chapter's integrity until all portions should have become effective." (Footnotes omitted.) *Shalbey, supra* at 525-526. Sections 6, 9, and 11 of the new law are cited in *Shalbey, id.* at 831 nn. 3-6, as mixtures of substantive and procedural law. Other examples are new c. 40A, §§ 7, 13.

[12] Town counsel made this point in argument, citing particularly the more burdensome notice requirements of new c. 40A, § 11 (defining parties in interest to include every landowner within 300 feet of the property for which special permit or variance is under consideration). One commentator has noted that the seventy-five-day period in new § 15 is too short, given the customary schedules of zoning boards. McLaughlin, The Obligation of the State Legislature to Amend the New Zoning Act, 63 Mass. L. Rev. 149, 150 (1978). Cf. Sacks & Curran, Administrative Law, 1954 Ann. Survey Mass. Law 126, 127.

the ninetieth day after its approval by the Governor. See art. 48 of the Amendments to the Constitution of the Commonwealth, The Referendum, I. But the law stated that some of its provisions should become effective before the ninety days. In this situation, it was advisable for the Governor to make an emergency declaration to assure that the legislative design would be achieved.[13]

Finally, we note that counsel for the plaintiffs refer to a memorandum, without date, stated to be from the zoning subcommittee of the House Committee on Urban Affairs to the Massachusetts Federation of Planning Boards. This indicated that "procedural actions" should be in accordance with various enumerated sections of new c. 40A, including § 15, "unless your community's ordinance or by-law specifically contains a different provision." Literally this proposition would favor the plaintiffs, but it does not appear compatible with § 7. By its enumeration of sections of the new law presumably believed to be procedural, the memorandum demonstrates dramatically the difficulty of the substance-procedure distinction.[14]

---

[13] The question of the relation of a Governor's declaration to an effective date specified in legislation without an emergency preamble (but subject to referendum under art. 48 of the Amendments to the Constitution of the Commonwealth, The Referendum, I) was left open in *Opinion of the Justices,* 368 Mass. 889, 897 (1975); see also *Prescott* v. *Secretary of the Commonwealth,* 299 Mass. 191, 198-199 (1938); G. L. c. 4, § 1. The case of *Sears* v. *Secretary of the Commonwealth,* 369 Mass. 392, 403-405 (1975), and *Opinion of the Justices, supra,* support the remark made in our text, as does the analysis by Stewart, The Law of Initiative Referendum in Massachusetts, 12 New England L. Rev. 455, 515-519 (1977).

There are special problems about gubernatorial declarations in connection with legislation not subject to referendum, such as legislation relating to the powers of courts, see Stewart, *supra* at 519-523, and the Chief Justice of the District Courts may possibly have been venturing in this field when he issued a bulletin saying that the abolition of District Court jurisdiction by reason of new c. 40A, § 17 (only a minor part of the law) became effective with the Governor's declaration of December 22, 1975.

[14] Neither can we attach much importance to remarks favorable to

The summary judgment should be vacated and the case remanded to the Superior Court for further proceedings.[15]

*So ordered.*

---

the defendant's position in a letter from William G. Flynn, Secretary of the Executive Office of Communities and Development, Department of Community Affairs, appearing in a pamphlet entitled "The Zoning Act," published by the agency in August, 1976. Commentators have not faced the question of effective dates squarely but do suggest that the grace period was intended to allow time to conform with all provisions of the new act. Bok & White, The New Zoning Act, 20 B.B.J. 11, 17 (1976); Huber, Zoning and Land Use, 1976 Ann. Survey Mass. Law 449, 449-450.

[15] We have found it unnecessary to deal in detail with the defendant board's contention that its actions in the denial of the variance conformed to new § 15. Cf. note 4 *supra*. The plaintiffs cross appealed from a provision of the summary judgment requiring them to give notice of the constructive grant of the variance, so that those aggrieved might duly seek review in the Superior Court. Under our foregoing opinion the cross appeal does not require separate attention.

We leave open the question whether actions as to existing municipal enactments taken during the interim period in compliance with new c. 40A when, in strictness, old c. 40A governed but was not complied with, should be held valid where the actions were taken in good faith and prejudice is not shown. In reserving the question we reflect the fact that there could be conscientious difference of opinion about which régime should obtain during that period.