McGuane, J.
This matter is before the Appellate Division on a single issue.
“Is the respondent, who is the subject of a Civil Commitment Petition pursuant to M.G.L.c. 123, §§ 7 and 8, entitled to have said Petition dismissed if the Court does not commence a hearing within fourteen (14) days after the filing of said Petition in the absence of a request for a delay made by either the respondent or his counsel?”
The report states and all parties agreed that on August 19, 1981 Dr. Mir Hashimi filed a petition in the Northampton Divison of the District Court Department to civilly commit Bruce Kalil pursuant to M.G.L.c. 123, §§ 7 and 8. A hearing was scheduled for September 3, 1981, fifteen days from the filing of the petition. Neither Mr. Kalil nor his counsel requested a countinuance.
On September 3, 1981, an oral Motion to Dismiss was denied without prejudice and the hearing was continued by the court over objection of Mr. Kalil for one week. On September 10,1981, a written Motion to Dismiss was filed on the grounds the Court was “without prejudice” since more than fourteen days had elapsed since, the filing of the petition. That motion was denied and basically is the issue in this appeal. A hearing was held on September 10, 1982 and the respondent committed.
The statutory language that gives rise to the respondent’s appeal is found in the last sentence of the G.L.c. 123, § 7 (c) which reads:
‘ ‘The hearing shall commence within fourteen days of the filing of the petition unless a delay is requested by the person or his counsel.”
The respondent’s position is that the use of the word “shall”’in said statute is mandatory and not directory.
The petitioner’s position is that the above quoted section reposes in the trial court discretionary power to commence the hearing beyond the fourteen (14) day period so long as this discretion is not abused.
The issue presented on appeal is whetherthe employment of the word “shall” as used in G.L.c. 123, § 7 (c) is mandatory or discretionary.
At the outset, it should be noted that “persons held in hospitals involuntarily pending a hearing suffer a significant loss of liberty, and the Court should make every effort to schedule a speedy hearing.” CIVIL COMMITMENT STANDARDS OF THE DISTRICT COURT DEPARTMENT OF THE TRIAL COURT. Commentary Standard 1-07.
The involuntary detention of persons in mental institutions involves serious constitu *140 tional questions and constitutes a “massive curtailment of liberty. ’ ’ Humphry v. Cady, 405 U.S. 504, 509 (1972). It therefore follows that serious procedural due process requirements attach to commitment proceedings.
The Massachusetts Legislature has responded to this requirement by enacting the present § 7 (c) of M.G.L.c. 123, effective July 1, 1978. (St. 1978, c. 367, § 71C). The former law required notice of a Petition for Commitment to the involved individual and his nearest relative or guardian. The person involved then had a right to request a hearing by filing within fourteen days of such notice. Under the version enacted in 1978, the burden was placed on the Commonwealth to not only file the petition but the burden of going forward on the petition. The court is required to hold the hearing within fourteen days of the filing of the petition. Since the person can be held or detained in a facility pending the commitment hearing, the person involved should be entitled to a prompt and timely hearing.
We must now answer the specific question of whether the statutory language is mandatory or directory.
The language in M.G.L.c. 123, §7 (c) is plain and unambiguous.
In the case of Globe Newspaper Company v. Superior Court (1980 Mass. Adv. Sh. 485, 501), the court stated “the word ‘shall’ as used in statutes ... is not of inflexible signification and not infrequently is construed as permissive or directory in order to effectuate a legislative purpose,” Swift v. Registrars of Voters of Quincy, 281 Mass. 271, 276(1932); see Myers v. Commonwealth, 363 Mass. 843, 846 (1973), “the word ‘shall’ :.. is commonly a word of imperative obligation ...” Johnson v. District Attorney for the Northern District, 342 Mass. 212, 215 (1961). “the general rule whereby direction's to public officers for the protection of public or private rights áre mandatory may be applied in a like manner to directions to courts.” C. SANDS, SUTHERLAND STATUTORY CONSTRUCTION § 57.16 at 439 (4th ed. 1973). Thus, “The mandatory construction appears preferable. Treating the statute as directory would frustrate its purpose —.”
For the above reasons, we feel that the word “shall” as used in M.G.L.c. 123, § 7 (c) is mandatory. Further, this interpretation will further the constitutional due process rights of any person who might have their liberty restricted by way of commitment to a facility.
Prejudicial error having been found, the decision of the District Court in committing the respondent is reversed and the Petition for Commitment is ordered to be dismissed.
Lenhoff, J. (dissenting). As stated in the opinion of the majority, “[t]he issue presented on appeal is whether the employment of the word ‘shall’ as used in G.L.c. 123, § 7 (c) is mandatory or discretionary.
It is assumed that the Legislature recognized that a civil commitment proceeding requires an adversary approach so that the petitioner and the respondent could assist the trial court in its factfinding process; that the petitioner possessed the burden to show beyond a reasonable doubt that the respondent is mentally ill and likely to cause serious harm to himself or others; and that there exists no less restrictive alternative to hospitalization. Also, that the respondent whose life and liberty are at stake, be extended safeguards to assert and properly protect his interests. Toward this end, said respondent has the right to representation, right to notice, a hearing, and a right to appeal. (See CIVIL COMMITMENT STANDARDS OF THE DISTRICT COURT DEPARTMENT OF THE TRIAL COURT Commentary standard 2:01, issued December, 1979.)
Further, the Legislature had to be aware of the fact that because such proceedings are adversary in nature, the Court is not a party thereto but solely the arbiter thereof, holding a neutral, fair and impartial position, to render an ultimate, just determination.
Along with the above, note is taken as disclosed in the majority opinion that the present § 7(c) of G.L. c. 123 became effective July 1, 1978 (St. 1978, c. 367, § 71C, *141 approved July 10, 1978). Also, prior thereto, the law provided that the court, upon receipt of petition for a commitment order, was to notify the involved person and his nearest relative or guardian of the receipt thereof and of the right to request a hearing by filing a written request therefor within 14 days. Stated another way, the present law accords hearing to the person named in the petition rather than placing the burden on such person to request same, to assure that one would not be deprived of liberty without due process of law. Notwithstanding such assurance, the law continues to have the named respondent in such petition retained or detained in a facility during the time the petition is pending awaiting hearing and disposition. [G.L.c. 123, § 6(a)],
Another factor to assist an appellate court in ascertaining legislative intent is the fact that the State has the power and the responsibility, under the doctrine of parens patriae, to care for and protect the best interests of disabled or incompetent persons. Doe v. Doe, 1979 Mass. Adv. Sh. 343.
Considering and combining all heretofore set forth that refers to adversary proceedings together with the forerunner to said § 7(c) and the doctrine of parens patriae, one can conclude that the Legislature has placed the court in a position to exercise power and influence to guarantee a concerned person of representation at a hearing to determine his protected, individual rights and whether such rights must yield to a State interest by reason of an adjudicated disability. Consequently, the legislative thrust is to give the court jurisdiction to fulfill such purpose, not to limit, restrict, or deprive it thereof. It follows, however, that in éxercising such jurisdiction, one must be accorded due process-of law; which, if abused, could prompt appropriate action to free anyone held unjustly against his will. The Legislature has provided for such possible abuse by the language appearing in G.L. c. 123, § 9(b) which enables one who can establish that he should no longer be retained in a facility to seek redress by making written application to a justice of the Superior Court.
Though the quotation in the majority opinion from the case of Globe Newspaper Company v. Superior Court therein cited, appears to impose a mandatory dictate to courts when the protection of private rights are involved, the Supreme Judicial Court has taken a contrary position where same relates to the time of performance of a duty of a public officer.
In Smith v. Director of Civil Service, 324 Mass. 455, 458-459 (1949), we find the following:
As to a statute imperative in phrase, it has often been held that where it relates only to the time of performance of a duty by a public officer and does not go to the essence of the thing to be done; it is only a regulation for the orderly and convenient conduct of public business and not a condition precedent to the validity of the act done.
See Police Dept., etc. v. Commissioners of Civil Service, 5 Mass. App. Ct. 896 (1977); Cullen v. Building Inspector of North Attleborough, 353 Mass. 671, 679-680 (1968); Cheney v. Coughlin, 201 Mass. 204, 211-212 (1909).
Another factor here concerned is the fact that courts possess wide, inherent power to do justice and to adopt procedures to that end. In carrying out this function, “it is sometimes the right and even the duty .... to act ... . sua sponte . . . . ” Police Commissioner of Boston v. Municipal Court of Dorchester District, 374 Mass. 640, 644 (1978); Quincy Trust Co. v. Taylor, 317 Mass. 195, 198 (1944); Boyajian v. Hart, 312 Mass. 264, 266 (1942).
In view of the foregoing, a position is reached to construe said § 7(c) as either affirmative, indicating direction for the orderly and proper dispatch of the court’s function; or, negative or prohibitive, to operate as a condition precedent creating a strict limitation of power.
The majority has concluded that the latter alternative applies, strictly limiting the *142 district court to commence hearing “within fourteen days of the filing of the petition,” and that such condition precedent not having been fulfilled, jurisdiction ends. Such conclusion is believed to be foreign to the intent of the Legislature whose true intent is consistent with a construction that said § 7(c) is affirmative, indicating direction for the orderly and proper dispatch of the court’s function; that the word “shall” as used therein directs that the court should commence or ought to commence a civil commitment hearing within fourteen (14) days from the date of the petition filing but not that it must; and, that in the absence of a stated reason by the court for not commencing the hearing as directed but which hearing was commenced and concluded within seven (7) days thereafter, and there being no evidence to demonstrate that the delay was purposeful, oppressive, unjustified orunreasonble, the trial justice acted properly. Consequently, I ascribe to the Legislature no intent to have the court divested of jurisdiction for not commencing a hearing within a stated time which obviously could readily be circumvented after a very short commencement followed by permitted continuances. Had the Legislature intended to firmly fix the commencement without any judicial discretion therein, it could have readily added verbiage qualifying the fourteen (14) day period to the effect that the hearing proceed without interruption to completion.[2] The Legislature understood that a reasonable delay accorded to a concerned individual or his counsel surely was also applicable to the court who is not an adverse party; and, that the court possessed the right, power and authority to fulfill the State’s proper function to care for and protect the best interests of persons found to be incompetent.
Therefore, the trial court should have been found to have acted correctly in its denial of the respondent’s motion to dismiss and his requests for ruling numbered (14) and (15) to result in the report being dismissed.

 In Cullen v. Building Inspector of N. Attleborough, 353 Mass. 671, 679 (1968). G.L. c. 40A, § 18, being the forerunner to now § 15 of present zoning law, the Supreme Judicial Court held that the board’s failute to make and file its decision on time was taken to be directory rather than mandatory. It then read, so far as is material: "(t)he decision of the boaid shall be made within sixty days after the date of the filing of an appeal, application or petition." Now. said § 15 (present law) reads: "(t)he decisionof the board shall be made within seventy-five days after the date of the filing of an appeal, application or petition.Failure by the board to act within seventy-five days shall be deemed to be the grant of the relief, application or petition sought, subject to an applicable judicial appeal as provided foi in this chapter." ln Casasanta v. Zoning Board ofAppeals of Milford, 377 Mass. 67, 69-70 11979), although decided on other grounds, the Court in commenting on zoning law changes stated that "(t)hus the stated period was extended, but it would appear the softening influence of the Cullen case was removed.”